**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MILLENNIAL PLASTIC SURGERY PLLC

                                                 Plaintiff,

                        v.

MEGHAN JAMES

                                                 Defendant.

---

**Civil Action No.: 21-cv-9590**

**COMPLAINT**

Plaintiff, Millennial Plastic Surgery PLLC ("Plaintiff" or "Millennial"), by and through its undersigned attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, brings its Complaint against Defendant, Meghan James ("Defendant" or "James"), and respectfully alleges as follows:

### THE PARTIES

1.      Plaintiff, Millennial Plastic Surgery PLLC is a New York professional limited liability corporation incorporated under the laws of the State of New York, located in New York County, New York. All Members of the PLLC are New York citizens.

2.      Upon information and belief, Defendant, Meghan James is an individual who is a citizen and resident of the State of California.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(3) in that the action is between a citizen of this state and a citizen or subject of a foreign state and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to 27 U.S.C. §1391(a), in that it is a district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated.

1

5.      Further, the agreement from which this dispute arises designates, and Defendant expressly agreed, that it is governed and constructed in accordance with the laws of the State of New York.

### FACTS COMMON TO ALL CLAIMS

#### THE AGREEMENTS

6.      Defendant James is a social media influencer who partners with brands and companies to promote their goods and services by posting on various social media and digital media accounts.

7.      James' Instagram account, for example, has over 1.2 million followers, and her posts include promotional content for skin care products, clothing brands, music, liquor and more.

8.      On or about October 15, 2021, Millennial and James entered into a sequence of agreements, whereby James would promote Millennial's services in exchange for two cosmetic procedures.

9.      The procedures to be performed were outlined in a Cosmetic Surgery Agreement, which stated that Millennial would perform a Liposuction 360 and liposuction of the arms, as well as a Biopolymer Removal Procedure.

10.      The Cosmetic Surgery Agreement states that the procedures had a value of $22,000.00. A true and correct copy of the Cosmetic Surgery Agreement is attached hereto as **Exhibit A**.

11.      In exchange for the procedures, and in lieu of monetary payment therefore, James agreed to a schedule of social media posts outlined in a schedule to an Influencer Agreement, effective on October 14, 2021. A true and correct copy of the Influencer Agreement is attached hereto as **Exhibit B**.

12.     The detailed schedule outlines that James would first, on October 30, 2021 publish a post on Instagram, as well as an Instagram Story revealing the upcoming surgeries, promoting Millennial, and telling her followers to "tune in on live surgery."

13.     Next, on November 1, 2021, James would post a "countdown tool" to her live surgery on her Instagram story.

14.     Then, the procedures would take place on November 2, 2021, during which Millennial's videographer would stream the procedures on Instagram live for James' 1.2 million followers.  The live stream and subsequent IGTV post of the live stream were clearly outlined in the content schedule and were an essential element of the contract between the parties, as they would provide James' followers with the most insight into Millennial, thus promoting the brand.

15.     James would then post updates once per month for the next year.

16.     In addition to, and in conjunction with, the Cosmetic Surgery Agreement and the Influencer Agreement, James agreed to and signed non-disparagement and non-disclosure agreements.

17.     In signing the non-disparagement agreement, James represented and stated "I agree not to in any way slander or injure the business reputation or goodwill of the [sic] Millennial Plastic Surgery, including, by way of illustration, through any contact with clients, prospective clients, vendors, suppliers, reviews, or social media regarding Millennial Plastic Surgery which could slander or injure the business reputation or goodwill of the Company." A true and correct copy of the Non-Disparagement and Non-Disclosure Agreements are attached hereto as **Exhibit C**.

<u>JAMES' BREACH OF THE INFLUENCER AGREEMENT</u>

18.     Upon information and belief, prior to the scheduled procedure on November 2, 2021, James' Instagram account became banned from live streaming any content.   When

3

questioned by Millennial, James assured Millennial that they would be able to live stream the procedures from her account.

19.     Relying on these statements, James was placed under anesthesia in order for Millennial to perform the procedures, and Dr. David Shokrian began James' liposuction procedures.

20.     Millennial's videographer, pursuant to the terms of the agreements between the parties, attempted to begin streaming the procedures live, but learned that James' Instagram account was still banned from livestreaming.

21.     Nonetheless, Dr. Shokrian finished the liposuction procedures, but refused to perform that Biopolymer Removal, as that procedure was the one the live stream was intended to promote.

22.     The Influencer Agreement states unequivocally that the "Influencer will be charged the full amount of surgery if the influencer does not comply with terms."

23.     James' ban from live streaming on Instagram, which led to the inability to live stream the procedure, is a breach of contract, and Millennial is entitled to payment for the liposuction procedures performed.

24.     Upon waking up from anesthesia, James began threatening Dr. Shokrian and Millennial for not performing the Biopolymer Removal procedure, despite having not performed her end of the contract.

JAMES' BREACH OF THE NON-DISPARAGEMENT AGREEMENT

25.     On November 16, 2021, seemingly not content with having received a free liposuction procedure worth $15,000.00 despite not streaming live as agreed upon, James took to Instagram for the sole purpose and with the clear intent to defame and denigrate Millennial Plastic

Surgery, posting a picture and a video with that caption "@theglamsquadnyc !! Thank you guys for everything & coming to the rescues [sic] after my horrible experience with @millennialplasticsurgery [emoji] You guys are highly appreciated." A true and correct screenshot of the post can be seen in Image 1 below.

**Image 1:**



26. On November 17, 2021, counsel for Millennial contacted James via a cease and desist letter demanding that she remove the post, as it violated the non-disparagement agreement that she knowingly and willingly signed.

27. Upon receipt, James responded via email stating "Hi, The information has been forwarded to my attorney."

28.     As of the time of this filing, the post remains available on Instagram.

29.     This is a clear violation of the non-disparagement agreement, and the blowback from the post is equally clear.

30.     The post has received over 24,000 likes from James' followers, and there are over 358 comments.

31.     Among those comments are numerous examples of how this violative post is damaging Millennial, both in reputation and monetarily.

32.     For example, one follower commented "@_meghanj im glad I saw this comment cause I saw your post promoting them and I actually called them for a consultation." See Image 2 below.  Based on James' post, Millennial has lost a patient.

**Image 2:**



nishnish1188 @_mehganj im glad I saw this comment cause I saw your post promoting them and I actually called them for a consultation.

18h   Reply   ...

33.     In another example, another follower commented "[girl], I was gonna go to them as well but someone [sic] about his work seemed off."  See Image 3 below. It is clear that the post has this individual to not use Millennial for any procedures.

**Image 3:**



_hunte Guurrlllllll, I was gonna go to them as well but someone about his work seemed off. Do a story time, I'm genuinely curious as to what happened

19h   6 likes   Reply

34.     Others   simply   attacked   Millennial,   stating   "shame   on   you
@millennialplasticsurgery"   or   encouraged   James   to   "sue   @millennialplasticsurgery   for   not
finishin and for ****ing up."

35.     Last, Millennial has received multiple messages cancelling upcoming procedures
and demanding refunds of their deposits.  See, for example, Image 4 below.

**Image 4:**



36.     Also among the comments are replies from James, further slating Millennial and
assuring her followers that she will be posting a negative YouTube video about Millennial, which
would be a further violation of the non-disparagement agreement.

37.     All of this is a result of James' own false representations and assurances regarding
her ability live stream the procedure.

MILLENNIAL'S DAMAGES

38.     As an initial point, the Influencer Agreement is clear that Millennial is entitled to payment of $15,000.00 for the liposuction services performed, as James did not comply with the terms of the Agreement.

39.     Millennial's damages for James' breach of the non-disparagement, however, are more difficult to quantify, but are significant.

40.     James has 1.2 million followers on Instagram, many of whom would be potential patients for similar cosmetic procedures that James has had, and Millennial performs. Procedures at Millennial range from $15,000.00 to $30,000.00.  Therefore, the fallout from this post, even if only 10 cancelled procedures, will cost Millennial hundreds of thousands of dollars, excluding just the loss of goodwill on its own.

**First Claim for Relief**
(Breach of Contract for Failure to Perform)

41.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth herein.

42.     Millennial and James entered into a valid and enforceable contract, supported by due consideration on October 15, 2021.

43.     Pursuant to the terms of the contract, Millennial would perform liposuction and biopolymer removal procedures, valued at $22,000.00, in exchange for James promoting and marketing Millennial to her over 1.2 million followers through a sequence of content posts.

44.     Critical to the promotion and the contract, James agreed that the procedures would be streamed live on Instagram, and that the live stream recording would then be posted on IGTV.

45.     James represented by virtue of the contract that she was willing and able to stream the procedure, and verbally reassured Millennial that she would be able to stream it prior to the procedure.

46.     When Millennial's videographer sought to stream the procedure, Millennial was unable to do so, as James' Instagram account was banned from live streaming, seemingly as a result of past violative posts.

47.     When James was informed that the biopolymer procedure did not take place, rather than seeking to remedy her breach, James leveled threats at Millennial relating to her social media presence, threats which, as stated herein, she ultimately followed through with.

48.     James' failure to take the necessary steps to live stream the procedure is a breach of the Influencer Agreement.

49.     Millennial was damaged by James' breach, in that Millennial provided surgical procedures without receiving the benefit of the contract between the parties.

50.     The Influencer Agreement states in the event of a failure to comply with the terms of the agreement, James would be obligated to pay the full price of the procedures.

51.     Therefore, Millennial is entitled to payment of $15,000.00 for the liposuction procedures performed.

## Second Claim for Relief
(Breach of Contract for Disparagement)

52.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth herein.

53.     As part of, and as consideration for, the contract between the parties, James "agreed not to in any way slander or injure the business reputation or goodwill of the [sic] Millennial Plastic Surgery, including, by way of illustration, through any contact with clients, prospective clients,

vendors, suppliers, reviews, or social media regarding Millennial Plastic Surgery which could slander or injure the business reputation or goodwill of the Company."

54.     On November 16, 2021, James caused a post to be made on her Instagram account that was intended to injure the business reputation and goodwill of Millennial.

55.     James has over 1.2 million followers on Instagram, many of whom would be potential patients of Millennial.

56.     The comments on the post reveal multiple instances of potential patients changing their minds about going to Millennial for their procedures on the basis of James' post.

57.     James was asked by counsel to remove the post, and thus mitigate the damages that it is causing, but has refused to do so.

58.     Millennial has been damaged both reputationally and monetarily by the post, and continues to be damaged as long as the post remains available on Instagram.

59.     The extent of the monetary damages from lost patients will be determined at trial, but is estimate, upon information and belief, to be in excess of $250,000.00 based on the reach of James' post, her influence among Millennial's potential patient pool, and the comments being made on the post.

60.     The extent of the reputational damage and damage to Millennial's goodwill is exceedingly difficult, if not impossible, to quantify.

**Third Claim for Relief**
(Defamation Per Se under New York Common Law)

61.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth herein.

62.     James' Instagram post is a false statement about Plaintiff's services, in that the "horrible experience" referred to was a result of James' own conduct.

63.     Millennial did not authorize the publication of the post, and indeed contracted with James' against it.

64.     James caused the post to be published with either actual knowledge that it was false or with a reckless disregard for whether it was false or inaccurate, in that she was aware that she did not have a bad experience with Millennial, and rather breached her contract, resulting in the cancellation of her procedure.

65.     James intended for the false statement to reach her 1.2 million followers, thus harming Millennial's reputation.

66.     James' statement is defamation per se, in that such a statement would injure Millennial in its trade, business, or profession.  Further, the statement impugns the basic integrity or creditworthiness of Millennial's business by its very nature.

67.     Therefore, injury is conclusively presumed.

68.     Further, even if injury is not presumed, as a result of the publication by Defendant, Plaintiff has suffered and continues to suffer damage to its business and reputation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Millennial Plastic Surgery PLLC, seeks judgment against Defendant, Meghan James, as follows:

i.      On the First Claim for Relief, for damages in an amount to be determined at trial, but not less than $15,000.00;

ii.     On the Second Claim for Relief, for damages in an amount to be determined at trial, but not less than $250,000.00;

iii.    On the Third Claim for Relief, for damages in an amount to be determined at trial, but not less than $250,000.00;

iv.     On the First and Second Claims for Relief, contractually provided costs and attorneys' fees incurred in this litigation; and,

v.     For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated:        Doylestown, Pennsylvania
              November 18, 2021

                                        **Respectfully Submitted,**

                                        **Garson, Segal,**
                                        **Steinmetz, Fladgate LLP**
                                        *Attorneys for the Plaintiff*

                         **By:** _____/s/_____
                                        Kevin Kehrli (KK1536)
                                        164 West 25th Street
                                        Suite 11R
                                        New York, NY 10001
                                        Telephone: (212) 380-3623
                                        Facsimile: (347) 537-4540
                                        Email: KK@GS2Law.com