# NON-DISCLOSURE AGREEMENT

## BETWEEN:

### MILLENNIAL PLASTIC SURGERY

- AND -

_____ *Menju Jan* _____
and

**BACKGROUND:**

A. The Information Provider and the Recipient Millennial Plastic Surgery desire to enter into a confidentiality agreement with regard to: are only permitted to utilize confidential information for the purpose of business development for Millennial Plastic Surgery. (The "Permitted Purpose").

B. In connection with the Permitted Purpose, the Recipient will receive certain confidential information (The 'Confidential Information').

**IN CONSIDERATION OF** and as a condition of the Information Provider providing the Confidential Information to the Recipient in addition to other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

### Confidential Information

1. All written and oral information and materials disclosed or provided by the Information Provider to the Recipient under this Agreement constitute Confidential Information regardless of whether such information was provided before or after the date of this Agreement or how it was provided to the Recipient.

2. 'Confidential Information' means all data and information relating to the product or products of the Information Provider as well as all data and information relating to the Information Provider, including but not limited to, the following:

   a. 'Customer Information' which includes names of customers of the Information Provider, their representatives, all customer contact information, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by customers of the Information Provider;

b. 'Intellectual Property' which includes information relating to the Information Provider's proprietary rights prior to any public disclosure of such information, including but not limited to the nature of the proprietary rights, production data, technical and engineering data, technical concepts, test data and test results, simulation results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets);

c. 'Marketing and Development Information' which includes marketing and development plans of the Information Provider, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Information Provider which have been or are being discussed;

d. 'Business Operations' which includes internal personnel and financial information of the Information Provider, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, external business contacts including those stored on social media accounts or other similar platforms or databases operated by the Information Provider, and the manner and methods of conducting the Information Provider's business;

e. 'Product Information' which includes all specifications for products of the Information Provider as well as work product resulting from or related to work or projects of the Information Provider, of any type or form in any stage of actual or anticipated research and development;

f. 'Production Processes' which includes processes used in the creation, production and manufacturing of the work product of the Information Provider, including but not limited to, formulas, patterns, molds, models, methods, techniques, specifications, processes, procedures, equipment, devices, programs, and designs;

g. 'Service Information' which includes all data and information relating to the services provided by the Information Provider, including but not limited to, plans, schedules, manpower, inspection, and training information;

h. 'Proprietary Computer Code' which includes all sets of statements, instructions or programs of the Information Provider, whether in human readable or machine readable form, that are expressed, fixed, embodied or stored in any manner and that can be used directly or indirectly in a computer ('Computer Programs'); any report format, design or drawing created or produced by such Computer Programs; and all documentation, design specifications and charts, and operating procedures which support the Computer Programs;

i. 'Computer Technology' which includes all scientific and technical information or material of the Information Provider, pertaining to any machine, appliance or process, including but

      not limited to, specifications, proposals, models, designs, formulas, test results and reports, analyses, simulation results, tables of operating conditions, materials, components, industrial skills, operating and testing procedures, shop practices, know-how and show-how;

    j. 'Accounting Information' which includes, without limitation, all financial statements, annual reports, balance sheets, company asset information, company liability information, revenue and expense reporting, profit and loss reporting, cash flow reporting, accounts receivable, accounts payable, inventory reporting, purchasing information and payroll information of the Information Provider; and

    k. Confidential Information will also include any information that has been disclosed by a third party to the Information Provider and is protected by a non-disclosure agreement entered into between the third party and the Information Provider.

3. Confidential Information will not include the following information:

    a. Information that is generally known in the industry of the Information Provider;

    b. Information that is now or subsequently becomes generally available to the public through no wrongful act of the Recipient;

    c. Information rightly in the possession of the Recipient prior to the disclosure to the Recipient by the Information Provider;

    d. Information that is independently created by the Recipient without direct or indirect use of the Confidential Information; or

    e. Information that the Recipient rightfully obtains from a third party who has the right to transfer or disclose it.

4. Except as otherwise provided in this Agreement, the Confidential Information will remain the exclusive property of the Information Provider and will only be used by the Recipient for the Permitted Purpose. The Recipient will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to the Information Provider or any associated affiliates or subsidiaries.

5. The obligations to ensure and protect the confidentiality of the Confidential Information imposed on the Recipient in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement and will be continuous from the date of this Agreement until October 4, 2020, except in the case of any Confidential Information which is a trade secret in which case those obligations will last indefinitely.

6. The Recipient may disclose any Confidential Information:

    a. to such employees, agents, representatives and advisors of the Recipient that have a need to know for the Permitted Purpose provided that:

        i. the Recipient has informed such personnel of the confidential nature of the Confidential Information;

        ii. such personnel agree to be legally bound to the same burdens of non-disclosure and non-use as the Recipient;

        iii. the Recipient agrees to take all necessary steps to ensure that the terms of this Agreement are not violated by such personnel; and

        iv. the Recipient agrees to be responsible for and indemnify the Information Provider for any breach of this Agreement by their personnel.

    b. to a third party where the Information Provider has consented in writing to such disclosure; and

    c. to the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body.

7. The Recipient agrees to retain all Confidential Information at their usual place of business and to store all Confidential Information separate from other information and documents held in the same location. Further, the Confidential Information may not be used, reproduced, transformed, or stored on a computer or device that is accessible to persons to whom disclosure may not be made, as set out in this Agreement.

### Non-Solicitation

8. The Recipient, their affiliates, subsidiaries and representatives will not, from the date of this Agreement until July, 2021, directly or indirectly solicit for employment or employ any person who is now employed or retained by the Information Provider or any affiliate of the Information Provider without the prior written consent of the Information Provider.

### Non-Competition

9. Other than with the express written consent of the Information Provider, which consent may not be unreasonably withheld, the Recipient will not, from the date of this Agreement until October 4, 2020, be directly or indirectly involved with a business which is in direct competition with the business lines of the Information Provider that are the subject of this Agreement.

10. From the date of this Agreement until July 2021 the Recipient will not divert or attempt to divert from the Information Provider any business the Information Provider had enjoyed, solicited, or attempted to solicit, from their customers, at the time the parties entered into this Agreement.

## Ownership and Title

11. Nothing contained in this Agreement will grant to or create in the Recipient, either expressly or impliedly, any right, title, interest or license in or to the intellectual property of the Information Provider.

## Remedies

12. The Recipient agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages and would cause irreparable injury to the Information Provider. Accordingly, the Recipient agrees that the Information Provider is entitled to, in addition to all other rights and remedies available to them at law or in equity, an injunction restraining the Recipient and any agents of the Recipient, from directly or indirectly committing or engaging in any act restricted by this Agreement in relation to the Confidential Information.

## Return of Confidential Information

13. The Recipient will keep track of all Confidential Information provided to them and the location of such information. The Information Provider may at any time request the return of all Confidential Information from the Recipient. Upon the request of the Information Provider, or in the event that the Recipient ceases to require use of the Confidential Information, or upon the expiration or termination of this Agreement, the Recipient will:

    a. return all Confidential Information to the Information Provider and will not retain any copies of this information;

    b. destroy or have destroyed all memoranda, notes, reports and other works based on or derived from the Recipient's review of the confidential information; and

    c. provide a certificate to the Information Provider that such materials have been destroyed or returned, as the case may be.

## Notices

14. In the event that the Recipient is required in a civil, criminal or regulatory proceeding to disclose any part of the Confidential Information, the Recipient will give to the Information Provider prompt written notice of such request so the Information Provider may seek an appropriate remedy or alternatively to waive the Recipient's compliance with the provisions of this Agreement in regards to the request.

15. If the Recipient loses or makes unauthorized disclosure of any of the Confidential Information, the Recipient will immediately notify the Information Provider and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information.

16. Any notices or delivery required in this Agreement will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the parties at the addresses contained in this Agreement or as the parties may later designate in writing.

17. The addresses for any notice to be delivered to any of the parties to this Agreement are as follows:
Temporary: 9 East 62nd Street, New York, New York, 10065
Permanent: 56 West 45th Street, New York, New York, 10065

### Representations

18. In providing the Confidential Information, the Information Provider makes no representations, either expressly or impliedly as to its adequacy, sufficiency, completeness, correctness or its lack of defect of any kind, including any patent or trademark infringement that may result from the use of such information.

### Termination

19. Either party may terminate this Agreement by providing written notice to the other party. Except as otherwise provided in this Agreement, all rights and obligations under this Agreement will terminate at that time.

### Assignment

20. Except where a party has changed its corporate name or merged with another corporation, this Agreement may not be assigned or otherwise transferred by either party in whole or part without the prior written consent of the other party to this Agreement.

### Amendments

21. This Agreement may only be amended or modified by a written instrument executed by both the Information Provider and the Recipient.

### Governing Law

22. This Agreement will be construed in accordance with and governed by the laws of the State of New York.

**Additional Provisions**

23. Funders, Donors, Sponsors and Celebrities connected to Millennial Plastic Surgery are not to be contacted for any other purpose that Millennial Plastic Surgery business unless approved in writing by Dr. David Shokrian.

**General Provisions**

24. Time is of the essence in this Agreement.

25. This Agreement may be executed in counterpart.

26. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

27. The clauses, paragraphs, and subparagraphs contained in this Agreement are intended to be read and construed independently of each other. If any part of this Agreement is held to be invalid, that invalidity will not affect the operation of any other part of this Agreement.

28. The Recipient is liable for all costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Information Provider in enforcing this Agreement as a result of any default of this Agreement by the Recipient.

29. The Information Provider and the Recipient acknowledges that this Agreement is reasonable, valid and enforceable. However, if a court of competent jurisdiction finds any of the provisions of this Agreement to be too broad to be enforceable, it is the intention of the Information Provider and the Recipient that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable, bearing in mind that it is the intention of the Recipient to give the Information Provider the broadest possible protection against disclosure of the Confidential Information.

30. No failure or delay by the Information Provider in exercising any power, right or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers or privileges preclude any further exercise of them or the exercise of any other right, power or privilege provided in this Agreement.

31. This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Information Provider and the Recipient.

32. This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise.

Name: Mengan Jalnel

Signature: [signature]

Date: 10/15/21

# MILLENNIAL | PS

## No Slander Contract

I, __[signature]__ agree not to in any way slander or injure the business reputation or goodwill of Millennial Plastic Surgery through any contact with customers, vendors, suppliers, employees or agents of Millennial Plastic Surgery, or in any other way.

I agree not to in any way slander or injure the business reputation or goodwill of the Millennial Plastic Surgery, including, **by way of illustration, through any contact with clients, prospective clients, vendors, suppliers, reviews, or social media** regarding Millennial Plastic Surgery which could slander or injure the business reputation or goodwill of the Company. I understand that if break this contract in any way, Millennial Plastic Surgery will take this case to mediation for slander, in addition to a $50,000 fine for fees attached to litigation.

Name: Mehgan James

Signature: Mehgan James

Date: 10/15/21