UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILLENNIAL PLASTIC SURGERY PLLC,

                Plaintiff,

-against-

MEGHAN JAMES,

                Defendant.

**ORDER FOR**

**PRELIMINARY INJUNCTION**

21 Civ. 9590 (ER)

Ramos, D.J.:

On November 19, 2021, Plaintiff filed a proposed order to show cause for emergency preliminary relief and supporting papers. Docs. 3, 5–6. In its motion, Plaintiff seeks an order (i) directing Defendant Meghan James to cause the Instagram post dated November 16, 2021 referencing Millennial Plastic Surgery ("Millennial") (the "Post") to be deleted, taken down, or otherwise unviewable by any third-party; (ii) directing Defendant to cause any other social media posts, known to Plaintiff or otherwise, to be deleted, taken down, or otherwise unviewable by any third-party; (iii) enjoining Defendant from posting, or causing any other person or account to post, on any social media or digital media platform, any content, statements, photographs, or other content, that directly or indirectly, explicitly or impliedly references Millennial, its employees, its affiliates, and/or its agents; and (iv) entering any and all other relief that this Court deems just and proper. Doc. 6 at 5–6.

On December 1, the parties appeared before the Court for a show cause hearing in connection with Plaintiff's motion. The parties subsequently submitted additional briefing pursuant to the Court's Order at the show cause hearing. Docs. 18–19, 25. On December 16, the parties appeared before the Court for a conference on the same issues.

The facts underlying this case are described in the parties' papers, familiarity with which is assumed, and will not be repeated here. *See* Docs. 1, 5–6, 18–19, 25.

## I. PRELIMINARY INJUNCTION STANDARD

"A party seeking a preliminary injunction must ordinarily establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).

"A heightened standard applies when a movant seeks a preliminary injunction that either alters the status quo or would provide the ultimate relief sought in the underlying action." *Demirayak*, 746 F. App'x at 51 (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)). Under this heightened standard, the plaintiff must make a clear showing that he is entitled to the relief requested, or that "extreme or very serious damage" will result from denial of preliminary relief. *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) ("The burden is even higher on a party . . . that seeks 'a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo.'" (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010))).

## II.     IRREPARABLE HARM

To establish irreparable harm, a party seeking a preliminary injunction must demonstrate that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quotation marks and citation omitted). Moreover, this harm must be "actual and imminent, not remote or speculative." *Id.*

A company's "loss of reputation, good will, and business opportunities" from a breach of contract can constitute irreparable harm. *Register.com, Inc. v. Verio*, *Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). In certain situations where it is impossible to estimate the amount of monetary loss resulting from the injury, courts in this Circuit have generally recognized that damage to business reputation and loss of clients may constitute "irreparable harm." *See, e.g.*, *JLM Couture, Inc. v. Gutman*, No. 20 Civ. 10575 (LTS) (SLC), 2021 WL 827749, at *21 (S.D.N.Y. Mar. 4, 2021) ("the contract rights sought to be protected by the injunction go to value associated with [plaintiff's] goodwill, which is inherently difficult to quantify, much less to restore"); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011) ("losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable").

Plaintiff has submitted evidence of several individuals expressing that they will no longer seek Plaintiff's services, purportedly as a result of the Post. *See, e.g.*, Compl. at ¶ 32–35. Based on Defendant's 1.2 million followers and the immeasurable reach of the Post, Plaintiff argues that the resulting reputational damage and loss of goodwill are sufficient to constitute irreparable harm. Doc. 6 at 2–3; Doc. 19 at 4–7. While the cases cited by Plaintiff in support of its argument are arguably distinguishable, as they involve situations where the party seeking injunctive relief is at risk of not providing products to its customers, trademark infringement, or

breach of non-compete provisions—as opposed to the non-disparagement provisions[1] here—the courts' reasoning for finding irreparable harm in those cases is applicable here. Doc. 6 at 2–3; Doc. 19 at 4–7. For example, the Post arguably resulted in "the loss of a relationship with a client that would produce an indeterminate amount of business in years to come," which establishes irreparable harm. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (affirming decision granting injunctive relief where there was a breach of non-compete provision). In response, Defendant dismisses Plaintiff's reliance on loss of goodwill and reputation and argues that Plaintiff's alleged harm is economic as a result of allegedly cancelled appointments. Doc. 25 at 6. Furthermore, Defendant appears to argue that the Court should not grant injunctive relief where, as here, Plaintiff's reputation is allegedly already badly damaged by negative reviews and news articles. *Id.* However, Defendant does not cite supporting case law for the proposition that injury to Plaintiff's reputation and goodwill as a result of the immeasurable reach of the Post does not constitute irreparable harm, or for the proposition that Plaintiff's reputation must be free from damage in order for the Court to find irreparable harm. Moreover, the parties agreed that a breach of the Irreparable Harm Provisions would constitute

---

[1] The parties' Cosmetic Surgery Agreement dated October 15, 2021 contains a section on liquidated damages ("the Irreparable Harm Provisions"), including the following terms: (i) "Patient will not, directly or indirectly, in public or private, defame, libel, or slander Doctor or any of Doctor's employees . . . ."; (ii) "Patient acknowledges that any breach of this section by Patient will cause Doctor irreparable harm for which Doctor will have no adequate remedy at law"; (iii) "Doctor will be entitled to the issuance of an injunction, restraining order, or other equitable relief in Doctor's favor restraining Patient from committing or continuing any such violation"; and (iv) "Patient further acknowledges that any breach of this section by Patient will cause Doctor damages that will be difficult, [i]f not impossible to calculate . . ." Exhibit B to the Declaration of David Shokrian (Doc. 5-2) at 5–6; *see also* Doc. 19 at 3. In addition, the parties' Non-Disclosure and Non-Disparagement Agreements dated October 15, 2021 contains the following term ("the Non-Disparagement Provision"), by which Defendant "agree[d] not to in any way slander or injure the business reputation or goodwill of [] Millennial Plastic Surgery, including, by way of illustration, through any contact with clients, prospective clients, vendors, suppliers, reviews, or social media regarding Millennial Plastic Surgery which could slander or injure the business reputation or goodwill of the Company." Exhibit C to the Declaration of David Shokrian (Doc. 5-3) at 9.

irreparable harm.[2] *See Ticor Title Ins. Co.*, 173 F.3d at 69 (finding an admission of irreparable harm where the contract concedes that breach of a provision would cause irreparable injury, entitling the non-breaching party to injunctive relief). Therefore, Plaintiff has established that it is likely to suffer irreparable harm in the absence of preliminary relief.

### III.     LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has established that it is likely to succeed on the merits under the standard for a typical prohibitory injunction, and it has made a "clear showing that [it] is entitled to the relief requested" under the heightened standard for a mandatory injunction. *Nicholson*, 344 F.3d at 165. Plaintiff alleges that to succeed on its claim for breach of contract, it must show the existence of a valid contract, that Plaintiff performed, that Defendant breached the contract, and that Plaintiff was damaged. Doc. 6 at 4. The parties do not appear to dispute that they entered a series of valid, enforceable agreements and that performing and livestreaming the procedures were terms of those agreements. The parties appear to dispute the issue of who first breached the agreements.

---

[2] On the issue of potential First Amendment concerns arising from injunctive relief enjoining speech, a party may be found to have waived constitutional rights if there is "clear" and "compelling" evidence of waiver and that waiver is voluntary, knowing, and intelligent. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967). Determining whether a waiver was voluntary, knowing, and intelligent rests "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct" of the waiving party. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also JLM Couture, Inc. v. Gutman*, No. 20 Civ. 10575 (LTS) (SLC), 2021 WL 827749, at *20 (S.D.N.Y. Mar. 4, 2021) (same). A challenge to an injunction as violative of the First Amendment fails where "the injunction's prohibition on speech that is false, misleading, defamatory, or disparaging effectively enforces defendants' own covenant not to engage in such speech." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 679 F. App'x 33, 36 (2d Cir. 2017) (collecting cases). Here, the Irreparable Harm Provisions and the Non-Disparagement Provision are "clear" and "compelling" evidence of waiver. Although Defendant contends that "[t]his Contract was drafted by [] Plaintiff without input from [] Defendant and without [] Defendant having counsel review the Contract," Doc. 25 at 8, it is not clear that this is sufficient to prove that the waiver was not voluntary, knowing, and intelligent. *See, e.g.*, *Typhair v. Town of Gouverneur*, 322 F. App'x 26, 27 (2d Cir. 2009) (finding that a waiver of due process rights was voluntary, knowing, and intelligent where the waiving party had reviewed the agreement before signing it and had not asserted that she was unaware of or did not understand the waiver provision, although the facts that the waiving party was unrepresented by counsel and that the waiver provision was not specifically negotiated both weighed against the validity of the waiver).

Plaintiff argues that Defendant breached the agreements prior to its refusal to perform the biopolymer removal procedure, because Defendant's Instagram account was banned from livestreaming the procedure.  *See* Doc. 6 at 4–5; Doc. 19 at 7–9.  In support of this argument, Plaintiff filed the Declaration of Jihong Lee, the Millennial employee who acted as the videographer for the procedures, in which Lee explains that Defendant's Instagram livestreaming feature did not fail as a result of a general outage on Instagram or Lee's alleged incompetence.  Doc. 18 at ¶¶ 8–11; *see also* Doc. 5 at ¶ 16.  Although Defendant argues that Plaintiff had numerous ways to stream the procedure without breaching the contract, she does not fully address Plaintiff's allegation that she breached the contract as a result of her Instagram account being banned from livestreaming.  For example, Defendant's argument that Plaintiff could have livestreamed from its own Instagram account, checked Defendant's livestreaming feature before the procedure, or recorded the procedure for Defendant to post later does not prove that Plaintiff breached first.  Doc. 25 at 5.  She also appears to imply that Plaintiff was not competent and had difficulty in attempting to livestream, but does not submit a declaration in opposition to the Declaration of Jihong Lee.  *Id.*  Furthermore, Defendant fails to cite any supporting case law for her arguments, including the argument that the anesthesia and Instagram's ban qualified as events excusing her performance under the force majeure clause in Article 10 of the Influencer Agreement dated October 14, 2021.  *Id.*; *see also* Exhibit A to the Declaration of David Shokrian (Doc. 5-1) at 5.  Therefore, Plaintiff has established that it is likely to succeed on the merits, and it has made a clear showing that it is entitled to the relief requested.

**IV.    BALANCE OF EQUITIES**

An injunction would arguably impose a hardship on Defendant, because she would be forced to remove the Post.  However, Defendant appears to have voluntarily agreed to this

purported hardship by agreeing to the Irreparable Harm and the Non-Disparagement Provisions in the contracts. Furthermore, at the show cause hearing on December 1, 2021, she stated that she did not object to taking down the Post. By contrast, absent an injunction, Plaintiff may lose business and customers as evidenced by the comments and messages from individuals claiming that they will no longer seek Plaintiff's services, although the extent of this harm is unknown based on Plaintiff's allegations. Accordingly, the balance of equities tips in Plaintiff's favor.

## V.   PUBLIC INTEREST

The public interest would arguably be served by granting an injunction, because an injunction here would encourage parties to abide by their agreements, including non-disparagement provisions. However, in Defendant's opposition as well as at the show cause hearing on December 1 and the conference on December 16, Defendant alluded to potential claims for medical malpractice and intentional infliction of emotional distress arising from Plaintiff's allegedly questionable medical decision not to perform the biopolymer removal procedure after Defendant's livestreaming feature failed to work. Doc. 25 at 7. Without more information regarding these claims, the Court holds that injunctive relief directing Defendant to remove the Post would not be contrary to the public interest. Accordingly, the public interest slightly favors Plaintiff.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff has established that (1) it is likely to suffer irreparable harm in the absence of preliminary relief, (2) it is likely to succeed on the merits and has made a clear showing that it is entitled to the relief requested, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.

Defendant is hereby directed, forthwith, to cause the Instagram post dated November 16,

2021 referencing Millennial to be deleted, taken down, or otherwise rendered unviewable by any third-party.[3]

       It is SO ORDERED.

Dated:   December 16, 2021
           New York, New York

                                            Edgardo Ramos, U.S.D.J.

---

[3] While the Court is not granting the full range of relief sought by Plaintiff, this determination is not meant to suggest that any subsequent posts by Defendant concerning Plaintiff would not be actionable as violative of the parties' agreements.