UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILLENNIAL PLASTIC SURGERY PLLC,

                         Plaintiff,

              -against-

MEGHAN JAMES,

                         Defendant.

**<u>ORDER</u>**

21 Civ. 9590 (ER)

Ramos, D.J.:

     Plaintiff Millennial Plastic Surgery PLLC ("Millennial") filed the Complaint on
November 18, 2021.  Doc. 1.  On November 19, Millennial filed a proposed order to show cause
for emergency preliminary relief and supporting papers.  Docs. 3, 5–6.  On December 1,
Millennial and *pro se* defendant Meghan James appeared before the Court for a show cause
hearing in connection with Millennial's motion.  On December 6 and December 8, counsel for
James filed papers in support of his motion to appear pro hac vice.  Docs. 20, 24.  The parties
subsequently submitted additional briefing pursuant to the Court's order at the show cause
hearing.  Docs. 18–19, 25.  On December 16, the parties appeared before the Court for a
conference on the same issues.  The same day, the Court granted in part and denied in part
Millennial's motion for a preliminary injunction.  Doc. 29.

     On December 20, the Court directed James to answer, move to dismiss, or otherwise
respond to the Complaint no later than January 12, 2022.  Doc. 30.  James failed to comply with
the order.  On January 20, Millennial requested a certificate of default from the Clerk of Court.
Docs. 31–32.  The Clerk's certificate of default was issued on January 21.  Doc. 33.  Four days

later, on January 25, James filed a motion to set aside default and papers in support thereof.  Doc. 34.

This case concerns the alleged breach by James of a series of contracts she entered into with Millennial to livestream two cosmetic surgical procedures to be performed on her by Millennial.  The contracts also required that she not slander Millennial.  Millennial alleges that she breached these provisions in that her social media was incapable of livestreaming and she defamed Millennial.

## I.    LEGAL STANDARD

In determining whether there is "good cause" to vacate an entry of default under Rule 55(c) of the Federal Rules of Civil Procedure, courts in this Circuit apply a three-factor test:  (1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense to the defaulted claims; and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.  *W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69 (2d Cir. 2013) (citation omitted).  These criteria must be applied in light of the Second Circuit's "oft-stated preference for resolving disputes on the merits."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (citation omitted); *accord Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam) ("[T]he extreme sanction of a default judgment [is] a weapon of last, rather than first, resort.") (citations omitted).  Moreover, although the same factors are analyzed to determine whether an administrative default and a default judgment should be vacated, there is a "more forgiving standard for setting aside an administrative default," like the one at issue here.  *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir. 2011).  "[B]ecause defaults are generally disfavored and are reserved

for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil*, 10 F.3d at 96.

## II.   DISCUSSION

### A.   Willfulness of the Default

The Second Circuit has interpreted the "willfulness" factor to refer to conduct that is deliberate, rather than merely negligent or careless. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted).  On the other hand, willfulness may be found where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *Id.*  However, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'" *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998).  Instead, to find that a default was willful, "it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (internal quotation marks and citation omitted).

Courts in this Circuit also consider "whether the defendant moved promptly to vacate the default upon notice of the judgment, . . . whether the defendant had actual notice of the action, and whether the defendant knew that the plaintiff had a claim against them." *Durso v. Modern Food Center, Inc.*, 17 Civ. 7324 (LAK) (GWG), 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019) (citation omitted).  Thus, if a defendant "does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control," a court can infer willfulness. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

James argues that Millennial failed to serve her and her counsel with the Complaint. Doc. 34 at 2.  She contends that she only heard about the Complaint on January 20, 2022, upon notification that Millennial filed a proposed Clerk's certificate of default.  *Id.* at 3.  Furthermore, defense counsel asserts that he was unaware of the Court's order dated December 20, 2021 until his paralegal spoke with Millennial's counsel who informed her that the Court's order "waived Plaintiff's requirement to serve Defendant with a copy of the Complaint."  *Id.* at 2–3.[1]  After defense counsel's paralegal spoke with Millennial's counsel, a search was performed, and the notification of the Court's order was found in defense counsel's spam folder.  *Id.* at 3.  Defense counsel explains that his firm's standard procedure to monitor the spam folder was disrupted due to COVID-19 affecting his employees.  *Id.*  Therefore, James asserts that her delay in responding to the Complaint was a result of excusable neglect.  *Id.* at 4.

Millennial argues that James acted willfully in failing to respond to the Complaint, asserting that there can be no doubt that James was aware of the Complaint in light of defense counsel's numerous interactions with the Court and Millennial.  Doc. 38 at 4.  Millennial further contends that defense counsel's claim that he was unaware of the Court's order dated December 20, 2021 is not credible for the following reasons:  (1) defense counsel's paralegal contacted Millennial within a day of its request for a certificate of default, requesting proof of service of the Complaint (which arguably shows that a notification of Millennial's request did not get lost in defense counsel's spam folder); (2) defense counsel himself was not afflicted with COVID-19, and therefore arguably could have checked his own email account; and (3) defense counsel has

---

[1] Contrary to Millennial's representation, the Court's order did not "waive" Millennial's obligation to serve the Complaint.  The Court's order dated December 20, 2021 stated:  "Defendant is directed to answer, move to dismiss, or otherwise respond to the Complaint no later than January 12, 2022.  If Defendant answers, the parties are further directed to submit the attached Civil Case Discovery Plan and Scheduling Order on consent by January 14, 2022."  Doc. 30.

4

appeared in approximately 25 federal cases and therefore is presumably familiar with the PACER system, its notifications, and docket access. *Id.* at 4–5. Therefore, Millennial asserts that this willful conduct is beyond negligence or carelessness.

The Court finds that James' actions, while negligent, do not rise to the level of willfulness. Regarding James' contention that she and her counsel were never served with the Complaint and were therefore unaware of it, in light of their participation in hearings before the Court, as well as defense counsel's appearance in this action, they nevertheless should have been aware of both the Complaint and the Court's order dated December 20, 2021. In any event, it appears that defense counsel's paralegal promptly contacted Millennial's counsel in connection with the Clerk's certificate of default. Indeed, Millennial confirms that within a day of its request for a certificate of default, defense counsel's paralegal contacted Millennial's counsel. Doc. 38 at 2. Four days after the entry of the Clerk's certificate of default, James filed the motion at issue. Accordingly, while it may have been careless or even negligent for defense counsel "to sit by and await service of the pleadings having been made aware of the fact that [James] had been named as a [d]efendant in this action," the Court cannot conclude that the conduct at issue rises to the requisite level of willfulness to warrant the extreme sanction of default. *Puddu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061 (AJN), 2020 WL 2833852, at *4 (S.D.N.Y. May 31, 2020) (concluding that defendant did not act willfully where he had actual notice of the case but believed he had not been served); *see, e.g.*, *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 197 (S.D.N.Y. 2021) (assuming *arguendo* that the defendant's conduct was willful where he admitted receiving an email notifying him of the complaint and vacating default); *Arbitron, Inc. v. Marathon Media, LLC*, No. 07 Civ. 2099 (DC), 2008 WL 892366, at *5 (S.D.N.Y. Apr. 1, 2008) (finding that the defendants defaulted willfully where

they exhibited a pattern of receiving notice of the case and doing nothing).  Therefore, the Court concludes that this factor weighs in favor of vacating the default.

### B.       Existence of Meritorious Defense

The Second Circuit has held that "[t]o satisfy the criterion of a meritorious defense, the defense need not be ultimately persuasive at this stage.  A defense is meritorious if it is good at law so as to give the factfinder some determination to make."  *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (internal quotations marks and citation omitted).  However, the defaulting party must present evidence of facts that, if proven at trial, would constitute a complete defense.  *Wildflower*, 338 F.R.D. at 198.  While "[t]he defaulting defendant 'need only meet a low threshold to satisfy this factor,'" *Gench v. HostGator.com LLC*, No. 14 Civ. 3592 (RA) (GWG), 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)), a defendant must still "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013) (quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)) (internal quotation marks omitted).  A defendant must do more than offer "conclusory assertions" in an affidavit or simply "dispute the amount of damages[.]" *Bricklayers*, 779 F.3d at 187.

James contends that she has meritorious defenses to the Complaint, as evidenced by a proposed answer, which is attached to the motion as Exhibit A.  Doc. 34 at 5.  In opposition, Millennial argues that James fails to identify, or submit any evidence in support of, any defense that, if proven at trial, would constitute a complete defense.  Doc. 38 at 5–6.

Here, James has met the low threshold to satisfy this factor.  In the proposed answer, James asserts that she performed her obligations under the contracts at issue, and was not under any ban from Instagram at the time of the procedures.  Doc. 34-2 at ¶¶ 18, 23–24.  She further denies defaming Millennial.  *Id.* at ¶¶ 25, 54, 62.  While the Court recognizes that she does not submit an affidavit to support these contentions, it notes that she raised these very same arguments during the show cause hearing before the Court on December 1, 2021.[2]  Accordingly, the Court concludes that this factor weighs slightly in favor of vacating the default.

### C.    Prejudice to Plaintiff

To determine whether setting the default aside will prejudice the plaintiff, it is not enough to show "delay alone[.]"  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).  Rather, courts must also "consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy, resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion[.]"  *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (punctuation omitted).

James argues that Millennial will not suffer any prejudice if the Court allows the case to move forward on the merits after only a short delay.  Doc. 34 at 5.  In opposition, Millennial contends that James has willfully caused delay and will presumably continue to do so.  Doc. 38 at 6–7.

---

[2] During the show cause hearing before the Court on December 1, 2021, James stated that she was not banned from livestreaming on Instagram at the time of the procedures, and that Millennial should have exercised due diligence and confirmed that the livestreaming feature worked before starting the procedures.  She further contended that Millennial's videographer was not able to successfully operate the livestreaming function.  Accordingly, she asserted that Millennial breached the contract by failing to perform the second cosmetic surgical procedure.  In addition, she posited that her subsequent Instagram post about her allegedly horrible experience with Millennial was truthful.

Millennial's arguments asserting prejudice do not relate to the effect of the delay.  Rather, Millennial speculates that "Defendant will continue to create difficulties at each stage of this litigation by continuing its same tactics of misrepresentation, willful delay, and disregard for the Court's time and rules."  *Id.* at 7.  Without more, these allegations, which are both speculative and founded on nothing more than delay, fail.  *See, e.g.*, *Enron Oil*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice."); *Wildflower*, 338 F.R.D. at 197–98 (finding no prejudice where plaintiff merely argued that it would be prejudiced by having to deal with an uncooperative adversary).  "The prejudice factor is especially strong in light of the short period of time between the entry of default and [James'] motion to vacate."  *Wildflower*, 338 F.R.D. at 199.  Accordingly, the Court concludes that this factor weighs in favor of vacating the default.

### D.      Weighing the Factors

Vacating the default is in keeping with the strong preference in this Circuit for resolving disputes on the merits.  "This result is particularly warranted given that we are considering the vacatur of an entry of default, rather than of a default judgment."  *Gench*, 2015 WL 3757120, at *5.  Thus, the Court concludes that, on balance, these factors weigh in favor of vacating the default in this case.

## III.    CONCLUSION

For the reasons set forth above, James' motion to set aside default is GRANTED.  Accordingly, James' motion requesting oral argument is DENIED as moot.  James is directed to answer the Complaint no later than February 17, 2022.

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 34 and 36.

It is SO ORDERED.

Dated:     February 10, 2022
           New York, New York

                                                    _____
                                                          Edgardo Ramos, U.S.D.J.